UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JONATHAN LEE GENTRY,

    Petitioner,

    v.

RICHARD MORGAN,

    Respondent.

Case No. C99-0289L

ORDER ON MOTION FOR SUMMARY JUDGMENT

## I. Introduction

This matter comes before the Court on Petitioner's "Motion For Summary Judgment" (Dkt. # 184). Jonathan Lee Gentry has petitioned this Court for habeas relief following his murder conviction and capital sentence in state court in Kitsap County, Washington. In this order, the Court addresses petitioner's first summary judgment motion, which argues that the trial court erroneously excused a qualified prospective juror. Respondent Richard Morgan argues that the trial court's decision was neither an unreasonable application of federal law nor an unreasonable determination of the facts.

## II. Factual Background

The facts giving rise to Gentry's trial have been recited elsewhere. See State v. Gentry, 125 Wn.2d 570 (1995). The relevant factual background for the instant motion is the oral

ORDER ON MOTION FOR
SUMMARY JUDGMENT - 1

1  examination of a juror who was dismissed for cause, and the state courts' application of the law.

2  **A.    Voir Dire**

3      At voir dire, 90 jurors filled out a 24-page questionnaire. Fifty-six jurors remained after the court first eliminated those jurors who indicated that they could not bear the time commitment of an estimated eight-week trial. The 56 were assigned new numbers and examined individually. The subject of the instant motion was Juror 22.

    The second part of the juror questionnaire addressed the jurors' attitudes towards the death penalty. Juror 22 indicated that his feelings were "not strong one way or the other. Let the judicial system be final authority." In response to the question, "Do you believe in the adage, 'an eye for an eye?'", Juror 22 checked the "Yes" box and the "No" box and drew an ampersand between them. In response to the question, "Could you set aside your own personal feelings regarding what the law ought to be and follow the law as the Court explains it to you?", Juror 22 checked the "Yes" box. Juror 22 indicated that there were no circumstances under which he would automatically vote for the death penalty, but that, "if the person was retarded, mentally ill and could not therefore be held responsible for the person's actions", then he would automatically vote against the death penalty.

    The court's oral examination of Juror 22 focused on his attitudes towards the death penalty. At first, the trial court seemed focused on ensuring that Juror 22 would not automatically be committed to the death penalty. This was in part due to his "eye for an eye" answer and this early response in the court's examination:

> Court: So with that, I would ask whether do you have any personal views either for or against the death penalty, or would you say you are neutral?
>
> Juror 22: Well, I would say there was a question in the questionnaire about an eye for an eye, and I believe that if a crime was committed by a person and he was found guilty of that crime, I believe that under that circumstance, the death penalty or whatever the law calls for should be put to use.

The court sought to clarify whether the juror would consider mitigating circumstances:

ORDER ON MOTION FOR
SUMMARY JUDGMENT - 2

| | | |
|---|---|---|
| Court: | | Given that that's the burden and what will happen in the penalty phase, would you be willing to consider the mitigating circumstances presented or the lack of mitigating circumstances presented in the penalty phase? |
| Juror 22: | | Yes, I would be willing to, yes. |

Finally, the court sought an answer confirming the juror's willingness to consider mitigating circumstances:

| | | |
|---|---|---|
| Court: | | Would you be absolutely committed even before the penalty proceeding began to discuss the mitigating circumstances to vote either for or against the death penalty regardless of what you hear in the penalty phase? |
| Juror 22: | | I couldn't do that. I would have to be open to the mitigating circumstances. |

Clearly, at this point, there was no basis for either side to challenge this juror for cause. However, the prosecutor's oral examination of Juror 22 elicited several problematic responses to questions regarding his willingness to accept that the state could prove the absence of mitigating circumstances. After reading to Juror 22 the state's burden—"has the State proved to you beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency"—the prosecutor and Juror 22 had the following exchange:

| | | |
|---|---|---|
| Prosecutor: | | If the State met that burden, would you be able to vote yes, knowing that it would be sentencing the defendant to death? |
| Juror 22: | | Yeah, if the State met that burden, you know, in my own mind, yes. |
| Prosecutor: | | Would you be willing, however, to consider mitigating factors that the court instructs you you should consider? |
| Juror 22: | | Uh-hum, yes, I would. |
| Prosecutor: | | If we convinced you, if the State met its burden and convinced you and you voted yes, could you vote yes knowing it would be the death penalty, even knowing that *that individual right there* would be sentenced to death? (emphasis added) |
| Juror 22: | | I don't know if I really could. |
| Prosecutor: | | You're in the second phase, okay? Assume we're there, and assume the State in your mind has met that burden, and the instructions say that if the State meets its burden, if we prove beyond a reasonable |

ORDER ON MOTION FOR
SUMMARY JUDGMENT - 3

|   |   |   |
|---|---|---|
| | | doubt that there are no sufficient mitigating circumstances, are you saying that you couldn't vote yes knowing that *that individual* would be sentenced to death? (emphasis added) |
| | Juror 22: | I'm saying I don't know what I would do in that case, whether I would or I wouldn't. I can't give you an honest answer, so I guess what I'm saying is that maybe I wouldn't comply with the court's wishes for the death penalty. |
| | Prosecutor: | So you're saying in that instance you would not be able to assure the court that you could follow the law? |
| | Juror 22: | In that instance, I don't think I could. |

Any lawyer or judge who has participated in this individual voir dire in capital cases recognizes that some jurors will change their answers once the questioning moves from the theoretical to the particular with the prosecution emphasizing "that individual right there" and "that individual" while forcing the juror to look directly at the defendant and imagine voting for his death.

The defense attorney focused only on Juror 22's attitudes towards the death penalty. At first, the answers he elicited were no different than those given to the prosecutor.

|   |   |   |
|---|---|---|
| | Defense: | [I]f you were convinced in your heart that there were not sufficient mitigating circumstances to justify a penalty other than the death penalty, could you follow what you believed in your heart was right and what the law required. |
| | Juror 22: | If I was convinced in my heart, I could go with the death penalty, but I don't think I'll ever—I've never been put in that spot before. I don't think I'll ever be convinced in my heart. |
| | . . . | |
| | Defense: | [I]f taking all those things into account, sir, the State proves to you in a penalty phase that there are not sufficient circumstances to justify a sentence less than death, and if you believe that beyond a reasonable doubt, could you return a verdict for death? |
| | Juror 22: | No, I couldn't. |

Later, however, defense counsel changed his tactics and asked some leading questions which seemed to suggest that it was appropriate for Juror 22 to say he *could* vote for the death penalty under some circumstances:

ORDER ON MOTION FOR
SUMMARY JUDGMENT - 4

| | |
|---|---|
| Defense: | [Y]ou understand that I am not asking and I don't think the prosecutors are asking for your opinion about how difficult or how easy it would be to prove that issue beyond a reasonable doubt. That's not something we're going into, do you understand that? |
| Juror 22: | Yeah. You don't want my opinion, yeah. |
| Defense: | What we are saying, though, is if it gets to that point, --- |
| Juror 22: | If it gets to that. |
| Defense: | --- if they do prove it to your satisfaction beyond a reasonable doubt, could you under those circumstances vote for the death penalty? And when I say prove it beyond a reasonable doubt, I mean prove to you not only that Mr. Gentry is guilty of aggravated first-degree murder in the first phase, but then prove to you in the second phase that there are not sufficient circumstances to merit leniency, not sufficient mitigating circumstances. If they prove all that, and they prove it beyond a reasonable doubt, could you return a verdict for the death penalty under those circumstances? |
| Juror 22: | Under those circumstances I could, yes. |
| Defense: | And under those circumstances, you could return a verdict for the death penalty even realizing that Mr. Gentry would be put to death as a result of your decision and the decision of the other 11 jurors? |
| Juror 22: | Yes. |

Juror 22 further indicated that the decision would not be easy, but that he could make it.

The prosecutor then asked several more questions, and received answers that were then largely consistent with Juror 22's final answer to defense counsel.

| | |
|---|---|
| Prosecutor: | And are you telling the court now, for whatever reason, whether it's from your heart and things you hold dear to you, that as you sit here now you don't believe the State could prove it to you beyond a reasonable doubt that there are not sufficient mitigating circumstances? |
| Juror 22: | I'm not saying that State can't prove it to me, that there aren't sufficient mitigating circumstances, I'm just saying that if the State proves it to me, I could vote for the death penalty, but I'm not prejuding this. I'm trying to be open-minded about it. The State would have to definitely prove it to me before I would vote for the death penalty. |
| Prosecutor: | Would you say definitely prove it to you, or is your heart talking to you? |

ORDER ON MOTION FOR
SUMMARY JUDGMENT - 5

| | | |
|---|---|---|
| Juror 22: | | My heart and my mind would have to say, yes, this man is guilty of the crime he was charged with, and if that's the sentence, and I feel that he is guilty, without any reasonable doubt in my mind, then I could go for the death penalty. |
| Prosecutor: | | But from what your heart and your mind are telling you, would it be fair to say that that is going to make it difficult for you to look at mercy in a very critical light, and that you would be more inclined to find that there is mercy because of what you believe in your heart? |
| Juror 22: | | I'd be more inclined to find that yes, there is mercy, by the way I believe, what I believe in my heart, right. |
| Prosecutor: | | That would make it very difficult for you? |
| Juror 22: | | For me to vote for the death penalty. |

This concluded the examination of Juror 22 by the parties and the court.

**B.      Application of the Law**

The prosecution moved to dismiss Juror 22 and the court granted the motion. Before doing so, however, defense counsel was given an opportunity to argue against Juror 22's dismissal, and the prosecution an opportunity to respond. The court recessed in order to review Wainwright v. Witt, 469 U.S. 412 (1985), and said the following when the court reconvened:

> Court:        The standard as pointed out by Mr. Moran, is whether the juror's attitude toward the death penalty will prevent or substantially impair his performance of the duties in accordance with instructions of the court and his oath, the standard in Wainwright v. Witt, and which I just reread.
>           This gentleman indicated that he can impose the death penalty if the State meets its burden of proof, but that because of his attitude toward the death penalty, he would be more inclined to find there is mercy as a mitigating circumstance. That indicates that he isn't completely open on that question. And I guess the question then becomes, the issue becomes whether that is a substantial impairment of his duties as a juror, which is to judge the case fairly. And I guess given this consequence here, I think that we need jurors that are down the middle as much as possible and I find that that's a substantial impairment and I'll sustain the challenge.

The juror was thereby dismissed.

On direct appeal, Gentry's attorneys challenged the trial court's dismissal of Juror 22 and one other potential juror. The state Supreme Court observed that the "prospective jurors

ORDER ON MOTION FOR
SUMMARY JUDGMENT - 6

1  testified, in part, that they were uncertain that they would be able to impose the death penalty."
2  Gentry, 125 Wn.2d at 635.  The court then held that the "record supports the trial court's
3  decision with respect to these jurors." Id. at 636.

### III.  Analysis

The theory of petitioner's instant summary judgment motion is tied closely to the unique facts of this case, and therefore defies easy categorization.  As a preliminary matter, petitioner argues that the Washington Supreme Court largely abdicated its responsibility to review this issue because it simply recited standard language about deference to trial court findings and ignored substantial concerns about the trial court's actual description of what it believed to be the appropriate substantial impairment standard.  Id. at 635–36.  This leads petitioner to analyze what went on during voir dire.  This case is unique because not only are Juror 22's answers inconsistent and ambiguous, the court's description of how it assessed those answers is, as well.  Petitioner first argues that the trial court did not use the correct standard under Wainwright v. Witt.  Next, petitioner seems to argue that even if the Court concludes that the trial court did approximate the correct legal standard when excusing Juror 22, then the facts do not support that standard, because the trial court was simultaneously declaring that the facts supported a lesser standard.  Respondent's opposition disregards these nuances and argues simply that the correct standard was used and that the facts support that standard.

**A.      The Washington Supreme Court's Decision**

This Court is directed to review the "last reasoned decision" of the state court in a habeas proceeding.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  The Ninth Circuit has further emphasized that it is the role of this Court to assess the *decision* of the state court, and not the reasoning.  See, e.g., Hernandez v. Small, 282 F.3d 1132, 1140 (9th Cir. 2002).  To that end, the Ninth Circuit has denied a habeas petition under § 2254(d)(1) "notwithstanding the trial [court's] own inadequate justification" for its decision.  Merced v. McGrath, 426 F.3d 1076, 1081 (9th Cir. 2005).  In Merced, the Ninth Circuit expressly disapproved of the state trial

court's and Court of Appeal's reasoning, but approved of the decision, which it found to be supported by undisputed facts. Id. (resting decision on "the fact that Mr. B. volunteered his belief in jury nullification in response to a question about his ability to be an impartial juror 'in this case'" and not on the trial court's statement that "[t]he [mere] fact that he believes in jury nullification is enough for me"); see also People v. Merced, 94 Cal. App. 4th 1024, 1030–31 (Cal. Ct. App. 2001).

The Gentry decision is not susceptible to Merced's resolution, however, because the Gentry trial court's conclusions of law and findings of fact were inextricably intertwined. The trial court found that the facts were adequate to support what it concluded was the appropriate standard under Witt. Petitioner argues that it was the wrong standard. The state Supreme Court arguably then only ratified what was a faulty decision based on inadequate facts.

Petitioner argues that the Washington Supreme Court perpetuated the trial court's error by deferring to the trial court's decision without exploring whether it had employed the correct standard. State v. Gentry, 125 Wn.2d 570, 635–36 (1995). The state Supreme Court concluded:

> The trial court granted the State's motions to excuse each of these jurors for cause and we defer to the judgment of the trial court in each instance. The question is not whether we, as a reviewing court, might disagree with the trial court's findings, but whether those findings are fairly supported by the record.

Gentry, 125 Wn.2d at 635.[1] This holding ignores the question of whether the trial court found

---

[1] The state Supreme Court also incorrectly identified Witt as the authority for the proposition that the it must give "deference to the trial court's factual finding [about] a prospective juror's state of mind." State v. Gentry, 125 Wn.2d 570, 634 n.102 (1995). The Witt Court deferred to the state trial court in compliance with the federal statute governing federal courts' habeas review of state courts' decisions. See Greene v. Georgia, 519 U.S. 145, (1996) ("Witt is not 'controlling authority' as to the standard of review to be applied by state appellate courts reviewing trial courts' rulings on jury selection."). Indeed, the "fairly support" language was eliminated by the Antiterrorism and Effective Death Penalty Act of 1996, although it still maintains some qualified relevance in federal courts today. See infra at n.3. The Witt opinion is persuasive authority for the prudence of such deference, however, and the practice of such deference appears to be settled law in Washington. See, e.g., State v. Noltie, 116 Wn.2d 831, 839–40 (1991).

ORDER ON MOTION FOR
SUMMARY JUDGMENT - 8

facts that supported the correct substantial impairment standard, or an incorrect one. If the trial court only found facts in support of the wrong standard, petitioner argues, then the Washington Supreme Court's explicit reliance on that fact-finding effort cannot provide validation to an erroneous application of Supreme Court law during jury selection. This Court must therefore analyze what transpired at voir dire.

**B.     Unreasonable Application of Federal Law**

Pursuant to the first clause of § 2254(d), the Court will not grant an application for a writ of habeas corpus unless the adjudication of a claim "resulted in a decision that . . . involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The "unreasonable" standard means that this Court "may not issue the writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000). Law is "clearly established . . . as determined by the Supreme Court of the United States" if the Supreme Court has rendered the decision prior to when a petitioner's state court conviction became final. Id. at 381.

The trial court may grant the state's motion to exclude for cause a juror if the juror's view on capital punishment "would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" Witt, 469 U.S. at 424 (citing Adams v. Texas, 448 U.S. 38, 45 (1980)). Examples of the proper application of Witt range from the dismissal of a juror who references the power of nullification, Merced, 426 F.3d at 1080–81, to jurors who state that they would automatically vote against the death penalty in the sentencing phase, Hendricks v. Vasquez, 974 F.2d 1099, 1103 (9th Cir. 1992).

The Supreme Court has clearly established, however, that even jurors "who firmly believe that the death penalty is unjust may nevertheless serve as jurors in capital cases so long as they state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law." Lockhart v. McCree, 476 U.S. 162, 176 (1986). So long as a juror clearly states

ORDER ON MOTION FOR
SUMMARY JUDGMENT - 9

his ability to follow the court's instructions, he is qualified under Witt.  In other words, the only reason the state may move to exclude a juror for cause under Witt is if a juror conveys that he will not be able to follow the instructions.  Gray v. Mississippi, 481 U.S. 648, 658 (1987) ("The State's power to exclude for cause jurors from capital juries does not extend beyond its interest in removing those jurors who would 'frustrate the State's legitimate interest in administering constitutional capital sentencing schemes by not following their oaths.'" (quoting Witt, 469 U.S. at 423)).  A juror who will be able to follow instructions may not be excused under Witt.

The trial court concluded that Juror 22 was substantially impaired because he was not "open" on the question of whether the state would be able to meet the burden of proof to show that there were no mitigating circumstances sufficient to justify a sentence less than death.[2]  "Open" appears to be a shorthand for "open-minded," or, willing to consider each party's arguments in the context of the court's instructions.  When the trial court said Juror 22 was not "open," it was referring to Juror 22's repeated assertion that the state would be unable to prove beyond a reasonable doubt that sufficient mitigating circumstances existed.  Juror 22's lack of "openness," in other words, referred to his capacity to answer the mitigating circumstances question; to wit, to follow the law in the penalty phase.  He was not open to that question, and therefore he could not follow the law.

When the trial court arrived at this conclusion, it also stated that Juror 22 "indicated that he can impose the death penalty if the State meets its burden of proof."  This statement was followed by the observation that Juror 22 was "inclined to find there is mercy," a characteristic that the court found to be incompatible with following instructions.  Thus, it is clear that the "indicated he can impose" language was not a finding of fact, but rather an observation about

---

[2] The trial court said, "I find that that's a substantial impairment." The "that" in the "that is" conjunction refers to the court's finding, two sentences earlier, that Juror 22's inclination to "find mercy" notwithstanding the facts "indicates that he isn't completely open on that question." The phrase "that question" refers to a juror's obligation to assess mitigating and aggravating circumstances.

ORDER ON MOTION FOR
SUMMARY JUDGMENT - 10

what Juror 22 claimed he could do. Faced with a juror who at times claimed that he could follow the law, and many other times stated that he would not be able to, the court resolved that Juror 22's lack of openness was a substantial impairment. The judge's failure to use specific words which, through Supreme Court imprimatur, authoritatively invoke the substantial impairment standard is no impediment to that judge's words having done so here. Witt, 469 U.S. at 432 ("The fact that a particular verb is used in a key passage of an appellate opinion stating the standard for excusing jurors for cause does not mean that that word, and no other, must be used in all the thousands of subsequent proceedings in which the prosecution challenges jurors for cause."). This Court finds that the trial court reasonably applied the substantial impairment standard in excusing Juror 22.

**C.     Unreasonable Determination of the Facts**

Under the second clause of § 2254(d), this Court shall not grant a writ of habeas corpus "unless the adjudication of the claim . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).[3] When the determination of the facts involves assessing the impartiality of a potential juror, "the trial court's resolution of such questions is entitled . . . to 'special deference.'" Patton v. Yount, 467 U.S. 1025, 1038 (1984). Equal deference applies to the trial court's finding of juror partiality. Witt, 469 U.S. at 429 ("Patton's holding applies equally well to a trial court's determination that a prospective juror was properly excluded for clause."). Thus, the Court will let stand the trial court's decision if "there is fair support in the record for the state court's conclusion." Patton, 467 U.S. at 1038.

There is abundant support in the record for the trial court's conclusion that Juror 22's

---

[3] Professors Liebman and Hertz observe that where the petitioner does not argue that the trial court was procedurally unreasonable, the "question thus posed—whether a factfinding is 'reasonable' in light of the record evidence—seems identical in substance to the question the superseded statute posed (whether the factfinding was 'fairly supported by the State court record')." RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 20.2c (5th ed. 2005).

ORDER ON MOTION FOR
SUMMARY JUDGMENT - 11

personal beliefs about capital punishment would prevent or substantially impair his ability to abide by his oath and follow instructions. Indeed, in reply to defense counsel's question that set forth the sentencing phase mitigating evidence instruction, and asked if he could put the defendant to death if the prosecution met its burden, Juror 22 answered simply: "No, I couldn't." Furthermore, through his answers, he repeatedly expressed profound doubts as to his own ability to conclude that no sufficient mitigating circumstances existed, notwithstanding any instruction regarding the prosecution's burden of proof. Juror 22 also told the prosecutor in the first round of questioning that if the state met its burden, and the law required Juror 22 to return a verdict of the death penalty, he would not be able to do so. These answers support the trial court's conclusion that Juror 22's ability to follow instructions was substantially impaired under Witt.

That Juror 22 occasionally contradicted himself is of no moment. "Fair support" is a deferential standard, and the observations of the trial court are essential to its decision to credit certain answers over others. See Patton, 467 U.S. at 1038 n.14. The Patton court's thoughts on voir dire in a capital case apply with equal force here:

> The testimony of each of the three challenged jurors is ambiguous and at times contradictory. This is not unusual on voir dire examination, particularly in a highly publicized criminal case. It is well to remember that the lay persons on the panel may never have been subjected to the type of leading questions and cross-examination tactics that frequently are employed, and that were evident in this case. Prospective jurors represent a cross section of the community, and their education and experience vary widely. Also, unlike witnesses, prospective jurors have had no briefing by lawyers prior to taking the stand. Jurors thus cannot be expected invariably to express themselves carefully or even consistently. Every trial judge understands this, and under our system it is that judge who is best situated to determine competency to serve impartially. The trial judge properly may choose to believe those statements that were the most fully articulated or that appeared to have been least influenced by leading.

Id. at 1038–39. Faced with such a record, it is inevitable that a reviewing court might disagree with the prior court's factual conclusions. The trial court's decision is reasonable in light of the evidence presented here, where the excused juror stated on several occasions that he would not be able to follow the law and that he would be unable to conclude that the prosecution had met its burden. Cf. Brown v. Lambert, 451 F.3d 946, 949 n.5 (9th Cir. 2006) (finding error where, during voir dire, excluded juror "stated *six times* that he could follow the law and impose the

ORDER ON MOTION FOR
SUMMARY JUDGMENT - 12

death penalty, while not *once* that he might not be able to do so").

During voir dire, Juror 22's "testimony . . . is ambiguous and at times contradictory." Patton, 467 U.S. at 1038. Patton's special deference standard requires this Court to assume that, where Juror 22 contradicted himself, the trial court was able to establish which statements were credible through its observation of Juror 22's demeanor. Id. ("[T]he determination is essentially one of credibility, and therefore largely one of demeanor."). The transcript of voir dire shows that Juror 22 indicated his willingness to follow instructions when defense counsel urged him to consider the issue in the abstract, or in regard to the prosecution's heavy burden. Juror 22 then consistently faltered when the prosecutor told him to consider the human aspects of his decision, and to think about having to decide to execute the man sitting before him at the defense table. The Patton special deference standard requires this Court to assume that Juror 22's answers to the prosecutor's questions demonstrated a sincerity or genuineness that was absent from his responses to defense counsel's questions, or that the trial court was able to identify which of these opposing perspectives Juror 22 would hold during the penalty phase. Without question, on several occasions, Juror 22 provided adequate grounds for a for-cause challenge under the Witt substantial impairment standard. The Court defers to the trial court's conclusion that Juror 22's view on the death penalty substantially impaired his ability to follow the court's instructions.

## IV. Conclusion

For these reasons, IT IS HEREBY ORDERED that petitioner's motion for summary judgment (Dkt. # 184) is DENIED.

DATED this 28th day of August, 2006.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER ON MOTION FOR
SUMMARY JUDGMENT - 13