UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JONATHAN LEE GENTRY,

        Petitioner,

    v.

RICHARD MORGAN,

        Respondent.

Case No.  C99-0289L

ORDER ON BRADY/NAPUE CLAIMS
REGARDING LEONARD SMITH

## I.  INTRODUCTION

This matter comes before the Court on Jonathan Lee Gentry's ("petitioner" or "Gentry") amended petition for a writ of habeas corpus.  See Dkt. #47 (First Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254) (hereinafter "Amended Petition").  Gentry contends that the State withheld material impeaching information regarding the jailhouse witness Leonard Smith ("Smith") in violation of Brady v. Maryland, 373 U.S. 83 (1963) and Napue v. Illinois, 360 U.S. 264 (1959).  Id. at 44-47; 49.  Gentry bases these claims on the alleged withholding of three categories of information regarding Smith:  (1) evidence purportedly showing that Smith received favorable disposition of his Oregon criminal convictions and parole violations in exchange for his testimony in State v. Gentry; (2) evidence concerning Donald Peck, an inmate who stated that he heard Hicks and Smith "talking about getting revenge on a guy named Gentry for . . . not paying his poker debt," and that they "were going to fabricate a story on Mr. Gentry"; and (3) interview notes from DPA Brian Moran suggesting that Smith did

not state that Gentry used the word "bitch" during his jailhouse confession to Smith. See Amended Petition at ¶¶191-211 (regarding Oregon charges); ¶212 (regarding Donald Peck declaration); ¶190. The Court previously ruled that Gentry defaulted the portion of his Brady/Napue claim relating to Smith's status in Oregon. See Dkt. #89; #141. The Court therefore must consider here whether Gentry has established cause and prejudice to excuse this default. See Dkt. #283 at 2 n.4.[1] In contrast, Gentry's claim based on Donald Peck's declaration was presented in Gentry's Washington Personal Restraint Petition ("PRP") and considered on the merits by the Washington Supreme Court in In re the Personal Restraint Petition of Jonathan Lee Gentry, 137 Wn.2d 378, 400 (1999) ("In re Gentry"). Accordingly, with respect to the Brady/Napue claim based on the Peck declaration, the Court must determine whether the Washington Supreme Court's ruling was contrary to, or an unreasonable application of clearly established Federal law. For the reasons set forth below, the Court denies Gentry's petition for a writ of habeas corpus with respect to all of Gentry's Brady and Napue violation claims regarding Smith. The Court also denies Gentry's motion to depose Smith (Dkt. #259), and grants in part and denies in part Gentry's motion to supplement the record (Dkt. #260).

## II. DISCUSSION

### A. Procedural History

In the July 11, 2001 "Order Regarding Exhaustion of Claims," the Court found that petitioner's Brady/Napue claims regarding Smith were not exhausted. See Dkt. #79 at 6-7. The Court stated that the next step in the analysis required determination of "whether [Gentry] is procedurally barred from returning to state court with his unexhausted claims." Id. at 12. "[T]o ensure the parties correctly brief[ed] the precise procedural questions" at issue, Gentry moved for an order clarifying the Exhaustion Order. See Dkt. #83 at 3 (Motion for Clarification of Exhaustion Order). On August 30, 2001, the Court issued an order clarifying that the "portion

---

[1] As discussed in Section II.B.3 below, the Court does not consider the portion of the notes from DPA Moran's interview of Smith as Brady material.

of the Brady/Napue claim regarding Mr. Smith receiving benefits from the State of Oregon is unexhausted." Dkt. #89 (Order for Clarification of Exhaustion Order) at 2. On March 24, 2003, the Court denied a motion for reconsideration of the Court's findings on exhaustion. See Dkt. #108 (Order Denying Motion for Reconsideration and Regarding Related Matters) at 3. On July 1, 2003, the Court found that Gentry had procedurally defaulted the unexhausted claims. See Dkt. #112 (Order Regarding Procedural Default). In the July 1, 2003 Order, the Court requested that the parties submit memoranda regarding whether Gentry could establish "cause" for the default and "actual prejudice" as a result of the alleged violation of Federal law, which would excuse the procedural default. Id. at 5.

After reviewing the parties' memoranda and hearing oral argument from counsel on March 26, 2004, the Court issued an "Order Regarding Cause and Prejudice." See Dkt. #141. In this Order, the Court addressed Gentry's Brady/Napue claims concerning Smith, stating:

> At oral argument Gentry's counsel advanced the argument that the Court should consider Gentry's Smith claims together with those regarding Hicks and Detectives Wright and Wagner. In support of this argument Gentry cites Banks v. Dretke, 540 U.S. [668 (2004)]. In Banks, the Supreme Court, faced with evidence of significant prosecutorial misconduct regarding Brady obligations, found that Banks had established cause for failing to present evidence to support his Brady claim. This evidence was uncovered only through a federal habeas corpus evidentiary hearing. Gentry contends that given evidence of a pattern of Brady and Napue misconduct in the underlying proceeding, the Court should conduct an evidentiary hearing to determine whether he can establish cause for his procedural default of the Smith Brady claims.
>
> At this point in time the Court cannot determine whether Gentry's default of his Smith Brady claims should be excused. However, the Court finds that resolution of whether Gentry's procedural default of his claims regarding Leonard Smith should be excused for cause should be reserved until after this Court conducts an evidentiary hearing. The Court therefore will consider whether Gentry has established cause and prejudice for default of his Smith Brady claims concurrently with the evidentiary hearing on Gentry's Hicks, Wright and Wagner Brady/Napue claims.

Dkt. #141 at 11-12.

On August 3, 2005, the Court framed the issues for the evidentiary hearing: "(a) Did a pattern of Brady and Napue misconduct before and during the underlying proceedings establish

cause for Petitioner's default of the Smith <u>Brady/Napue</u> claims? [and] (b) Did the State violate <u>Brady</u> and <u>Napue</u> by failing to disclose evidence relating to Timothy Hicks, Brian Dyste, Detective Wright, or Detective Wagner?" Dkt. #156 (Order Regarding Discovery and Evidentiary Hearing). Beginning on March 6, 2006, the Court held the evidentiary hearing on the <u>Brady</u> and <u>Napue</u> claims and heard testimony about whether a pattern of misconduct established cause for petitioner's procedural default of his <u>Brady</u> claim regarding Smith. The parties submitted post-hearing briefs in support of their respective arguments. <u>See</u> Dkt. ##258, 267, 269. Accordingly, Gentry's <u>Brady/Napue</u> claim regarding Smith is now ripe for review.[2]

**B.    Analysis**

In the interest of judicial economy, the Court incorporates the applicable standard of review set forth in its "Order on Petition for Habeas Relief Based on <u>Brady</u> and <u>Napue</u> Violations." In summary, in order for Gentry to prevail on his <u>Brady/Napue</u> claims regarding Smith, Gentry must show that the Supreme Court's rulings in <u>In re Gentry</u> were "contrary to, or involved an unreasonable application of, clearly established Federal law" or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Dkt. #283 at 6-10. In the prior order, the Court also concluded that there is no conflict between the Washington PRP and <u>Brady</u> standard as set forth in <u>In re Gentry</u>, therefore the Court turns first to whether the Washington Supreme Court's rulings regarding Peck and Smith violate § 2254(d). <u>Id.</u> at 9-10.

**1.    Leonard Smith <u>Brady/Napue</u> claim based on Peck's statements**

In the Amended Petition, Gentry claims that Peck allegedly overheard a conversation between Hicks and Smith in which the men discussed getting revenge against Gentry because he had not paid his poker debts. <u>See</u> Amended Petition at ¶212 ("Donald A. Peck, another inmate,

---

[2] On the first page of his post-hearing brief, Gentry requests oral argument. <u>See</u> Dkt. #258 (Petitioner's Post-Evidentiary Hearing Brief). In light of the four-day evidentiary hearing in this matter, which included post-hearing oral argument, the Court denies Gentry's request for additional post-hearing argument. <u>See</u> Dkt. #256 (March 9, 2006 Transcript of Proceedings).

has also subsequently averred that he heard Hicks and Smith 'talking about getting revenge on a guy named Gentry for . . . not paying his poker debt,' and he learned that they 'were going to fabricate a story on Mr. Gentry.'"). The Washington Supreme Court considered this claim on the merits in <u>In re Gentry</u>:

> Gentry's claim of a conspiracy between Hicks and Smith is supported by the statements of Donald Peck, who is currently an inmate at Walla Walla. Peck says he was at Shelton in late 1989 or early 1990, and he knew Gentry, Smith, and Hicks (who was using the name Doug Baker). Peck claims he heard Smith and Baker (Hicks) planning to get revenge against Gentry because he had failed to pay his poker debts. The State provides Smith's declaration denying any such conversation occurred, or that there was any such plan. Peck does not claim to have told the prosecutor or any other agent of the State about this alleged plot in time for Gentry's trial counsel to be informed of it, however. To the contrary, he says he was unaware the inmates had testified against Gentry until after the trial. At that point, Peck says, he wrote to Gentry explaining what he had overheard. Gentry does not say he passed this information on to his appellate counsel. Thus, as far as can be determined, no agent of the State was aware of Peck's allegations until Gentry filed his PRP.
>
> <u>Brady</u> requires only that prosecutors discover and disclose "any favorable evidence known to the others acting on the government's behalf in the case, including the police." <u>Kyles v. Whitley</u>, 514 U.S. [419, 437 (1995)]. While the prosecution cannot avoid <u>Brady</u> by keeping itself ignorant of matters known to other state agents, <u>United States v. Hamilton</u>, 107 F.3d 499, 509 (7th Cir. 1997), the State has no duty to search for exculpatory evidence. <u>State v. Judge</u>, 100 Wn.2d 706, 717, 675 P.2d 219 (1984). Thus, since no state agent ever possessed the information contained in Peck's affidavit, it is not "<u>Brady</u> material." [<u>In re Rice</u>, 118 Wn.2d 876, 888 (1992)].

<u>In re Gentry</u>, 137 Wn.2d at 399-400.

The Court concludes that the Washington Supreme Court's ruling that the information contained in Peck affidavit is not <u>Brady</u> material is not contrary to, or an unreasonable application of, clearly established Federal law. "Supreme Court holdings at the time of the state court's last reasoned decision are the source of clearly established Federal law for purposes of the AEDPA." <u>Barker v. Fleming</u>, 423 F.3d 1085, 1093 (9th Cir. 2005) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)). At the time the Washington Supreme Court denied Gentry's PRP, "the components of a <u>Brady</u> claim were clearly established by Supreme Court law—a defendant must show that 1) the prosecution suppressed evidence that 2) was favorable to the

accused and 3) was material." Id. (citing Strickler v. Greene, 527 U.S. 263, 281–82 (1999)); see also Brady, 373 U.S. at 87. In In re Gentry, the Washington Supreme Court correctly applied Kyles v. Whitley and concluded that the information contained in the Peck declaration was not Brady material because it was not known to others acting on the government's behalf in the case. See Kyles, 514 U.S. at 437 ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.") (emphasis added); see also United States v. Zuno-Arce, 44 F.3d 1420, 1427 (9th Cir. 1995) ("[T]he prosecutor is deemed to have knowledge of and access to anything in the custody or control of any federal agency participating in the same investigation of the defendant.") (quotation marks omitted, emphasis added). Furthermore, based on an independent review of Peck's statements and declaration submitted with Gentry's First Amended PRP, and Smith's declaration submitted with the State's Response to the Amended PRP, the Court finds that the Washington Supreme Court's findings set forth above were based on a reasonable determination of the facts in light of the evidence presented in the state-court proceeding, and Gentry did not rebut the Court's findings by clear and convincing evidence under 28 U.S.C. § 2254(e)(1). See 37 REC 19927-32 (Ex. 50 (Peck Statement); Ex. 51 (Peck Decl.) to Amended PRP)); 38 REC 20756-60 (Ex. X (Smith Decl.) to Response to Amended PRP)).

### 2. Claim regarding Smith's alleged favorable treatment in Oregon in exchange for his testimony

In his Amended Petition, Gentry contends that the State failed to turn over evidence regarding Smith's receipt of beneficial treatment from Oregon prosecutors, police, and the parole board purportedly in exchange for his testimony in Gentry's case. See Amended Petition at ¶¶191-211. Gentry asserts that "[h]ad this information been provided, Mr. Gentry's lawyers would have been able to show the jury that Mr. Smith lied about not receiving any benefits for his testimony and lied about his felony charges being reduced to misdemeanors." Id. at ¶211.

"Evidence of a deal or promise of lenient treatment in exchange for a witness's testimony against a defendant may constitute evidence that must be disclosed under Brady and Napue.

The deal or promise need not be express; failure to disclose an agreement or guarantee of leniency 'indicated without making a bald promise' may also violate Brady." Hovey v. Ayers, 458 F.3d 892, 916-17 (9th Cir. 2006) (internal citation omitted) (quoting United States v. Butler, 567 F.2d 885, 888 n.4 (9th Cir. 1978). If Smith in fact received some assurance of leniency for his testimony, this information would have been favorable to Gentry as impeachment evidence and should have been disclosed by the prosecution. Given the procedural posture here, Gentry must now show cause for failing to raise this claim in the state-court proceeding.

"'Cause and prejudice' in this case 'parallel two of the three components of the alleged Brady violation itself.'" Banks v. Dretke, 540 U.S. 668, 691 (2004) (quoting Strickler v. Greene, 527 U.S. 263, 282 (1999)). "Corresponding to the second Brady component (evidence suppressed by the State), a petitioner shows 'cause' when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence; coincident with the third Brady component (prejudice), prejudice within the compass of the 'cause and prejudice' requirement exists when the suppressed evidence is 'material' for Brady purposes." Id. As discussed below, the Court concludes here that since there is no evidence about leniency in exchange for testimony in Gentry's case, there is no Brady violation.

In his post-evidentiary hearing brief, Gentry sets forth a sequence of events purporting to show that Smith obtained favorable disposition his criminal charges in Oregon. See Dkt. #258 at 15-16.[3] The reason for this allegedly favorable treatment, however, was the subject of recross and redirect examination of Smith at trial on June 3, 1991:

Redirect Examination:

Q.    Okay. And there were no deals worked out for any of this with regard to your probation or parole in Oregon for testifying. Is that right?

A.    None at all.

---

[3] The factual predicate for these contentions is based on Ex. 300, which, for the reasons discussed in Section II.B.6(a) below, the Court declines to admit into the record.

1     Q.     Your parole officer didn't say you had to do this. Is that right?

2     A.     No, he, um-mm, he told me it is up to me, you know, you make your own mind up. And I made my own mind up.

3     Q.     Thank you, Mr. Smith.

Recross Examination:

    Q.     Mr. Smith, do you really think that if you have a problem with your parole in the State of Oregon that the fact that you testified in a capital murder case up here will assist you none whatsoever? Do you really think it won't help you a bit?

    A.     I already know it is not going to help me.

Redirect Examination:

    Q.     Why not, sir?

    A.     Well, to tell you the truth, I got new charges, I got new charges in Oregon for malicious mischief and theft by selling, I guess, because my – what had happened is I bought some carpet and sold it to my landlord, okay. So I asked my lawyer, I said, "Well, hey, will this Washington deal, can this help me get off this?" "No." They says, "You are going to court." So – but that was after this had already happened. This just happened like just here a couple weeks ago.

    Q.     Okay. Thank you, Mr. Smith.

Recross Examination:

    Q.     Are those felonies, Mr. Smith?

    A.     Pardon?

    Q.     Are those felonies?

    A.     Misdemeanors.

    Q.     Misdemeanors.

    A.     There you go.

    Q.     So your testifying in this capital murder case is not going to help you on a misdemeanor?

    A.     No.

    Q.     Is that right?

    A.     No. They dropped the charges down there. They were a felony first, and then they dropped them down.

    Q.     That is fine, Mr. Smith.

Redirect Examination:

Q. <u>Were they dropped down, Mr. Smith, as a result of your coming up here?</u>

A. <u>No. It is because -- it is a result of the Oregon State Police Department illegally trespassed on my property to obtain evidence before they went and got a search warrant for my house.</u>

16 REC 8678:7-8680:20 (emphasis added).

In the guilt-phase closing argument, Gentry's counsel attempted to highlight the link between Smith's testimony and the Oregon charges:

> What about Mr. Smith? Do you remember him telling you, "I have no expectation that I'm going to get anything for my testimony," no expectation whatsoever. And then, not five minutes later, the words out of his own mouth are, "When I got popped on my most recent crime down in Oregon, the first thing I asked my lawyer is, 'Can I use this case up in Seattle to get something?'." The fact that his lawyer told him, "No" is not the issue. Mr. Smith is a professional. He knows how the system works; Possession of Stolen Property in Pierce County, same offense, again, in Pierce County, Burglary in the Second Degree in Pierce County, Theft by Receiving in Oregon.

18 REC 10177:2-14.

At the evidentiary hearing, the Court inquired whether the defense had information regarding Smith's 1991 Oregon charges at the time of trial. Gentry's trial counsel responded:

> I don't think we knew anything about it. So I do remember, either on redirect examination or it seemed like at the end of the testimony, there was some stuff that was coming out that we hadn't heard before. So, if that's what Mr. Smith said, I am sure I would have tried to tie those two together. I would have tried to tie those two things together.

Dkt. #255 at 206:7-14.

As the trial record shows, on recross examination, Gentry's trial counsel did attempt to tie the reduction in Smith's 1991 Oregon charges to his trial testimony. But, Gentry asserts in his Amended Petition that a <u>Brady</u> violation occurred because he was not given information regarding evidence of the deal or promise of lenient treatment in exchange for Smith's testimony. The problem with this claim, however, is that there is no evidence that a deal or a promise existed.

For example, at the evidentiary hearing DPA Moran was asked repeatedly about a

possible "deal" with Smith:

> Q.   Mr. Smith ever ask you for favorable treatment or a deal in exchange for his testifying at Mr. Gentry's trial?
>
> A.   I don't recall that he did, no.

Dkt. #255 at 48:10-13.

> Q:   With respect to Mr. Smith, did you ever offer him any benefits of any kind in exchange for his testimony in State v. Gentry?
>
> A.   No.
>
> Q.   To the best of your knowledge, did he receive any benefits of any kind for testifying in Mr. Gentry's case?
>
> A.   No.

Id. at 53:24-54:6.

On redirect examination, Smith explained why the 1991 Oregon charges had been reduced. 16 REC 8680:15-20. In the PRP proceeding, consistent with his trial testimony, Smith declared that he did not receive any benefit for his testimony, which was not refuted by petitioner in the PRP proceeding. 37 REC 20757 (Smith Decl.) at ¶3. Viewing the facts in the light most favorable to Gentry, in the seventeen years since he testified no credible evidence has been produced that there was an express or implicit agreement to provide assistance to Smith in exchange for his testimony, or that Smith received any benefit from his trial testimony—just speculation. The prosecution cannot be faulted for withholding potentially impeaching or exculpatory evidence that does not exist. Therefore, Brady, and by extension, Napue, are not implicated. Furthermore, Gentry has not shown "cause" for his failure to develop facts in the state-court proceedings because the State did not suppress relevant evidence.

### 3.   Notes from DPA Moran's interview of Smith

In his Amended Petition, Gentry references the fact that Smith testified at trial that Gentry told him "I killed my girlfriend" and called her a "bitch." See Dkt. #47 at ¶190. While the petition does not allege facts supporting a potential Brady violation regarding this testimony, in his post-evidentiary hearing brief, Gentry states that "[t]he recently disclosed notes also

indicate that when Smith was interviewed by DPA Moran, Smith did not state that Mr. Gentry had used the word 'bitch' during his reported confession to Smith." Dkt. #258 at 32; EH Ex. 579. The Court finds that DPA Moran's original notes that do not make reference to the word "bitch" do not constitute <u>Brady</u> material, and therefore the prejudicial value of Moran's failure to hand over these notes will not be considered. Moran's notes from his interview with Smith represent his "impressions of the evidence" and therefore are not included in the <u>Brady</u> disclosure obligation. <u>Morris v. Ylst</u>, 447 F.3d 735, 742 (9th Cir. 2006) ("[I]n general, a prosecutor's opinions and mental impressions of the case are not discoverable under <u>Brady</u> unless they contain underlying exculpatory facts."), <u>cert. denied</u>, 127 S. Ct. 957 (2007).

### 4. Alleged inmate's call to Smith

In his post-evidentiary hearing brief, Gentry also suggests that based on testimony elicited at the evidentiary hearing there is a <u>Brady/Napue</u> issue regarding Smith because the State was aware that Hicks and Smith spoke to each other before trial, "which raises the suspicion that Hicks was calling to make sure their stories were compatible." Dkt. #258 at 18. The Court finds, however, that the testimony at the evidentiary hearing did not credibly show either that: (1) Hicks contacted Smith <u>before</u> trial; or (2) that the State was aware that Hicks had contacted Smith. The testimony regarding the timing of Hicks's alleged call is ambiguous at best. It is true that early in his evidentiary-hearing testimony and in response to leading questions Hicks suggested that he had spoken with Smith before trial.

Q. Did you make any telephone calls to Smith from custody?

A. Yeah. I think I called down there one time, Oregon.

Q. When was that? Prior to trial?

A. Prior to trial?

Q. Yes.

A. Okay, could have been. Could have been.

Dkt. #254 at 28:25 - 29:7. Later in his testimony, Hicks equivocated on the timing of his call to Smith:

Q. And you testified earlier that you called Smith sometime before trial; if I'm correct? And did you get a hold of him and talk to him about this?

A. I don't remember if I got a hold of Leonard, or if I talked to his mom. I really don't remember.

Q. Do you have any recollection of talking to Leonard about his testimony, either before or after?

A. Afterwards.

Id. at 33:5-12.

Gentry's contention that the State knew about the contact between Smith and Hicks is equally as unpersuasive. Gentry states in his brief, "[u]ndermining Moran's contention that he knew nothing about it are the telephone records he ordered regarding calls to Smith's residence. He requested telephone records extending back to the time when Hicks began cooperating." Dkt. #258 at 18 (citing EH Ex. 121). The Court finds, however, that the testimony elicited at the evidentiary hearing does not show that the State was aware that Hicks was the inmate referenced in EH Ex. 121 who allegedly called Smith. DPA Moran testified that Exhibit 121 did not refer to the alleged call between Hicks and Smith:

Q. And this is because Mr. Hicks told you that he talked to Leonard Smith, made a collect call to him?

A. I don't recall that. I don't believe that's what this note [EH Ex. 121] can refer to.

• • •

A. If I believed this note [EH Ex. 121] related to Mr. Hicks, I would have disclosed it. But what I read here –

Q. This note followed Mr. Hicks telling you, as he testified, that he said he made a collect call to Mr. Smith?

A. Mr. Englehard, I told you, I just don't recall that.

Q. Okay. Fair enough.

Dkt. #254 at 182:13-16; 183:3-10.

Finally, Hicks testified that he did not believe the State had inquired about the alleged calls:

Q. Did Detective Wright or any of the prosecutors or anyone else from the Kitsap County law enforcement ever ask you about telephone calls that you may have

1    made to Mr. Smith at his mom's home?

2    A.    Did the people from Kitsap County ever ask me about that?

3    Q.    Yes.  Did they ever ask you about telephone calls you may have made to Smith?

4    A.    I don't think so.

5    Dkt. #254 at 28:16-24.[4]

6    For these reasons, Gentry's theory that Hicks told DPA Moran that Smith called Hicks

7    before trial, and that the State withheld this information, is not supported by the evidence.  There

8    is no evidence that the State was aware of this information, therefore it is not <u>Brady</u> material

9    because it was not known to those acting on the government's behalf in the case.  <u>See</u> <u>Kyles</u>,

10   514 U.S. at 437.

11       **5.    Gentry's motion to depose Smith**

12   After the evidentiary hearing, Gentry moved to depose Smith.[5]  <u>See</u> Dkt. #259.  "[A]ny

13   right to federal discovery presupposes the presentation of an unexhausted federal claim, because

14   a federal habeas petitioner is required to exhaust available state remedies as to each of the

15   grounds raised in the petition."  <u>Calderon v. United States Dist. Court for the N. Dist. of Cal.</u>, 98

16   F.3d 1102, 1106 (9th Cir. 1996).  Gentry satisfies this requirement because the Court has

17   ─────────────────────

18       [4]  The Court also finds that whatever Hicks might or might not have disclosed in the back of a
19   police car on his way to testify is speculation at this point.  <u>See</u> Dkt. #254 at 29:24-4; 29:18-24 ("Q.  But
     you – isn't it correct that, when you, on your car ride up to Kitsap County to Port Orchard to testify, that
20   you told the people in the car that Mr. Smith could not have overheard these statements that you attribute
     to Mr. Gentry?  A.  I believe I did say that. . . .  A.  All I can do is speculate on remembering.  I would
21   imagine we were riding there, and just were talking, I guess.  You know, I know it's redundant, but I'm
     not crystal clear on what happened 15 years ago in a conversation in the back of a cop car.").  Detective
22   Wright also testified that he could not recall what was said during this car ride.  <u>See</u> Dkt. #254 at 84:5-13
     ("I don't recall what was said during that car ride.").
23
         [5]  In their motion and response, both parties incorrectly assert that the Court previously denied
24   petitioner's request to depose Smith in its June 2, 2000 Order (Dkt. #64).  <u>See</u> Dkt. #259 at 2 ("This
     Court has previously denied petitioner's request to depose Leonard Smith.  Docket Number 64."); Dkt.
25   #262 at 1 ("As Mr. Gentry correctly notes, this Court previously denied his request to depose Leonard
     Smith.  <u>See</u> Docket No. 64.").   In "Petitioner's First Request for Leave to Conduct Discovery" (Dkt.
26   #49), however, Gentry did not move for Smith's deposition.  Therefore, the request for the deposition
     was not before the Court in 2000.
27
28   ORDER ON <u>BRADY/NAPUE</u> CLAIMS
     REGARDING LEONARD SMITH - 13

previously ruled that his Smith <u>Brady/Napue</u> regarding the disposition of Smith's Oregon charges is unexhausted. The Court therefore, turns to Rule 6 of the Rules Governing Section 2254 Cases, which states that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." In <u>Bracy v. Gramley</u>, 520 U.S. 899, 904 (1997), the Supreme Court stated that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." The Court went on to explain: "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry." <u>Id.</u> at 908-09 (quoting <u>Harris v. Nelson</u>, 394 U.S. 286, 2990 (1969)). The Supreme Court also held that "the scope and extent of such discovery is a matter confided to the discretion of the District Court." <u>Id.</u> at 909. Since the 1996 statutory changes, the Ninth Circuit has continued to apply the abuse of discretion standard. <u>See</u> <u>Pham v. Terhune</u>, 400 F.3d 740, 741 (9th Cir. 2005).

Gentry requests Smith's deposition in order to show that Smith called Hicks shortly before trial, and that Smith told DPA Moran this alleged fact. <u>See</u> Dkt. #259 at 3-4. At the evidentiary hearing, petitioner was given wide latitude to question both DPA Moran and Hicks concerning this issue. As discussed above, however, Gentry failed to produce credible evidence showing either that the purported call between Smith and Hicks definitively occurred before Smith testified, or that the State was aware of the alleged contact. <u>See</u> Section II.B.4, <u>supra</u>. In light of the opportunity to pursue this issue during the four-day evidentiary hearing, and the lack of credible evidence produced at the hearing, the Court finds that Gentry has not shown good cause to continue the inquiry of this issue through Smith's deposition. <u>See</u> <u>Bader v. Warden, N.H. State Prison</u>, 488 F.3d 483, 488 (1st Cir. 2007) ("Just as the district judge had latitude to allow initial discovery as to the previously unknown meeting, he also had latitude to call a halt when three disinterested witnesses said that no such agreement had been made.") (affirming district court's denial of discovery).

### 6. Motion to supplement evidentiary hearing exhibits

After the evidentiary hearing, Gentry moved to supplement the record with exhibits that were not presented at the hearing, but which he contends were the subject of evidentiary hearing testimony. <u>See</u> Dkt. #260 (Motion); Dkt. #264 (Reply). Specifically, Gentry moves for the admission of Exhibit 300, consisting of Oregon court records and parole board records pertaining to Smith and matters pending at the time he testified, and Exhibit 301, consisting of Kitsap County Superior Court records pertaining to informant work for Kitsap County in 1989 by Brian Dyste.

#### a. Exhibit 300

Rule 7 of the Rules Governing Section 2254 Cases states that "[i]f the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition." Under 28 U.S.C. § 2254(e)(2), "a claimant who 'failed to develop the factual basis of a claim in State court proceedings' <u>will not be permitted to supplement the record</u> in federal court unless the claim relies on (1) 'a new rule of constitutional law,' made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or 'a factual predicate that could not have been previously discovered through the exercise of due diligence'; and (2) 'the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.'" <u>Brown v. Farwell</u>, 525 F.3d 787, 793 (9th Cir. 2008) (quoting § 2254(e)(2)) (emphasis added).

Exhibit 300 consists of documents related to Smith's criminal and parole matters pending in Oregon at the time he testified. As detailed in Section II.B.2 above, the charges pending in Oregon at the time Smith testified were the subject of several rounds of recross and redirect examination at trial. Gentry has not shown here why the "factual predicate," consisting of the records concerning Smith's Oregon charges contained in Exhibit 300, could not have been discovered through the exercise of due diligence in the state proceedings following trial. Gentry's trial counsel acknowledged at the evidentiary hearing that "at the end of the testimony,

there was some new stuff that was coming out that we hadn't heard before." Dkt. #255 at 206:9-11. Gentry has failed to explain, however, why this "new" information was not pursued in the state PRP proceeding. In the Court's June 2000 discovery order, the Court declined to permit discovery from Oregon authorities. See Dkt. #64 at 6. In the Court's subsequent order regarding discovery and the evidentiary hearing, the Court stated that Gentry could renew his request for discovery from Oregon authorities should the discovery allowed from the Kitsap County authorities reveal specific contacts with Oregon authorities relating to Smith. See Dkt. #156 at 2. Gentry, however, never renewed his request for discovery from the Oregon authorities. Despite this fact, based on his submission of Exhibit 300, it appears that Gentry was able to obtain the Oregon records pertaining to Smith without this Court's intervention. Accordingly, Gentry failed to show why he was unable to obtain the records during the state PRP proceeding or in time for this Court's March 2006 evidentiary hearing. For these reasons, the Court denies Gentry's request to supplement the record with Exhibit 300 because he has failed to show why these records could not have been previously discovered through the exercise of due diligence.

### b. Exhibit 301

In contrast, the documents with which Gentry seeks to supplement the record in Exhibit 301 were discovered pursuant to the Court's original order authorizing discovery. See Dkt. #64 (permitting discovery regarding Brady and Napue claims from Kitsap County authorities). These documents are exhibits submitted as related to the evidentiary hearing and relevant to several witnesses' testimony. See, e.g., Dkt. #254 at 70, 158-160. The Court previously authorized the evidentiary hearing under § 2254(e)(2), and Gentry is not required to meet that burden anew for a subsequent supplementation of the record in conformance with the Court's orders. Accordingly, the motion for supplementation of the record with respect to Exhibit 301 is granted.

### III. CONCLUSION

For the foregoing reasons, Gentry's petition for a writ of habeas corpus is denied with

respect to all of Gentry's <u>Brady</u> and <u>Napue</u> violation claims for Leonard Smith. The Court also denies Gentry's motion to depose Leonard Smith (Dkt. #259), and grants in part and denies in part Gentry's motion to supplement the evidentiary hearing exhibits (Dkt. #260). Exhibit 301 is admitted into the record, but the Court declines to supplement the record with Exhibit 300.

DATED this 5th day of September, 2008.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge