UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JONATHAN LEE GENTRY,

          Plaintiff,

    v.

STEVEN SINCLAIR,

          Defendant.

NO. C99-289RSL

ORDER DENYING MOTION FOR
RECONSIDERATION

## I. INTRODUCTION

This matter comes before the Court on petitioner Jonathan Lee Gentry's "Motion for Reconsideration," Dkt. #293. On September 15, 2008, the Court granted respondent's motion for summary judgment, denied petitioner's cross-motion for summary judgment, and denied petitioner's amended habeas petition. Dkt. #288 ("Summary Judgment Order"). Petitioner's motion for reconsideration challenges the Court's Order on a number of grounds. For the reasons set forth below, the Court denies petitioner's motion.

## II. DISCUSSION

### A. Background

As the facts of this case are recounted in detail in the Court's Summary Judgment Order, see Dkt. #288 at 1-5, they will be abbreviated here. After a jury found Gentry guilty of aggravated first degree murder and felony first degree murder of 12-year-old Cassie Holden, Gentry received a death sentence. 24 REC 13591. The Washington Supreme Court affirmed

ORDER DENYING MOTION FOR
RECONSIDERATION - 1

Gentry's conviction on direct appeal, see State v. Gentry, 125 Wn.2d 570 (1995), and subsequently denied his personal restraint petition, see In the Matter of the Personal Restraint Petition of Jonathan Lee Gentry, 137 Wn.2d 378 (1999), amended by 1999 Wash. LEXIS 448 (June 30, 1999). This Court stayed Gentry's execution pending resolution of his amended habeas petition. Dkt. #29. In its Summary Judgment Order, the Court denied that petition and granted respondent's motion for summary judgment. Dkt. #288. The Court granted Gentry leave to file a motion for reconsideration on a limited set of issues, id. at 63, and requested further briefing, Dkt. #296, but Gentry's present motion seeks reconsideration of additional issues as well.

## B. Analysis

### 1. Ineffective Assistance of Counsel

Gentry requests that the Court reconsider his various claims of ineffective assistance of counsel ("IAC"). Pursuant to Local Civil Rule 7(h)(1), "[m]otions for reconsideration are disfavored," and "[t]he Court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." See also Backlund v. Barnhart, 778 F.2d 1386, 1388 (9th Cir. 1985); Reliance Ins. Co. v. Doctors Co., 299 F.Supp. 2d 1131, 1154 (D. Haw. 2003) ("Reiteration of arguments originally made in support of, or in opposition to, a motion for summary judgment do not provide a valid basis for reconsideration."). Because Gentry has failed to meet this standard for any of his IAC claims, his motion for reconsideration on those grounds must fail.

### a. Jailhouse Informants

The Court's Summary Judgment Order dismissed Gentry's claim that his counsel was ineffective for failing to fully investigate the State's three jailhouse witnesses. Dkt. #288 at 34. The Court found that Gentry's failure to establish the materiality of the Brady evidence with respect to the jailhouse informants was fatal to his IAC claim because "[t]he materiality standard

under Brady v. Maryland, 373 U.S. 83, 87 (1963), is the same as the prejudice standard under Strickland v. Washington, 466 U.S. 688, 694 (1984)." Id. at 33 (quoting Clay v. Bowersox, 367 F.3d 993, 1000 (8th Cir. 2004)).  In his motion for reconsideration, Gentry contends that the Court "has not considered that trial counsel also failed to conduct an adequate investigation which would have revealed additional impeaching evidence regarding jailhouse informants." Dkt. #293 at 3-4.

Gentry's attempt to repackage his original IAC claim as a new issue overlooked by the Court is to no avail.  Tellingly, Gentry's claim of prejudice in his motion for reconsideration refers back to his previous arguments regarding the materiality of the Brady evidence.  See id. at 4 (citing Dkt. #258 at 23-27 and Dkt. #269 at 3-4).  The Court correctly rejected Gentry's IAC claim for the same reason it rejected his Brady claim – "there was no reasonable probability that the outcome of the trial would have been different if the impeachment evidence had been disclosed to the jury," Dkt. #288 at 33.[1]  Gentry's vague reference to "additional impeaching evidence regarding jailhouse informants" which might have been revealed by such an investigation, Dkt. #293 at 3-4, provides no basis for the Court to find manifest error in its original ruling.  Nor does Gentry's citation to Carriger v. Stewart, 132 F.3d 463 (9th Cir. 1997), advance his cause.  Although Carriger stated that defense counsel's failure to request the witness's corrections file "constituted clear ineffective assistance of counsel," 132 F.3d at 480, it did not "independently consider the ineffective assistance of counsel issue" in light of its Brady analysis, id.  Even if Carriger did hold that counsel acted deficiently, the case has no bearing on the Court's prejudice analysis in the present case.

Accordingly, Gentry's motion for reconsideration of this IAC claim is denied.

---

[1]  In considering Gentry's Brady and Napue violation claims, the Court noted that "[d]efense counsel obtained significant amounts of impeachment evidence, which he used to great effect in Hicks's cross-examination," Dkt. #283 at 18; see also id. at 21 ("The Court finds that defense counsel Jeff Robinson effectively demonstrated [that Hicks was a lying career criminal] to the jury at Gentry's trial[.]").

ORDER DENYING MOTION FOR
RECONSIDERATION - 3

**b. Detective Wright**

In its Summary Judgment Order, the Court denied Gentry's IAC claim pertaining to Detective Douglas Wright, finding that Gentry "failed to present the existence of credible impeachment evidence against Detective Wright" and "therefore there is no corresponding colorable IAC claim for failure to investigate this evidence." Dkt. #288 at 36. In his present motion, Gentry contends that the Court never considered all of the impeachment evidence regarding Detective Wright. Dkt. #293 at 5.

Gentry points to two instances of Detective Wright's misconduct he claims were overlooked by the Court. First, he contends that the Court neglected to consider evidence that Detective Wright had been fired from the Mason County Sheriff's Office for improper conduct. Id. Gentry's counsel only briefly pursued this matter upon cross-examination of Detective Wright, see Dkt. #254 at 44-45, and direct examination of Mr. Hudson, id. at 214: 5-12, at the evidentiary hearing. Notably, counsel never fleshed out the circumstances surrounding Detective Wright's termination from the Mason County Sheriff's Office and was rather quick to move on once Detective Wright acknowledged that the Kitsap County Sheriff's Office, his subsequent employer, knew of those circumstances upon hiring him, id. at 45:9-12. Despite the fact that Gentry "was granted wide latitude to present evidence concerning the alleged impeachment evidence" at the evidentiary hearing, Dkt. #288 at 35, Gentry failed to fully elicit the allegedly damning circumstances of Detective Wright's 1977 termination or convince the Court that the termination constituted credible impeachment evidence. Furthermore, Gentry's present motion offers nothing to demonstrate that the Court's refusal to give weight to this evidence was manifest error.

Second, Gentry contends that the Court failed to consider proof that Detective Wright lied to Judge Hanley during an investigation in an unrelated case. Dkt. #293 at 5. In so arguing, Gentry provides no citation to the March 2006 evidentiary hearing but rather vaguely refers to over 300 pages from the state court record. See id. (citing 40 REC 21497-21793 and 41 REC

22009-22039). This evidence lacks credibility for the same reasons articulated in the Court's Summary Judgment Order, see Dkt. #288 at 35-36. Gentry's motion before the state court cites Detective Wright's testimony that upon investigation of his conduct in that case, Kitsap County authorities "determined that there was no wrongdoing." 40 REC 21520. Gentry argued in response that "others believe the failure to act was part of desire on the part of the Prosecutor's Office to cover up the perjury and the illegal search." Id. These "others" primarily refers to Douglas Hudson, the very same Douglas Hudson whose testimony the Court found incredible in its Summary Judgment Order. Dkt. #288 at 35. As the Court previously noted, Mr. Hudson had a bias against Detective Wright, for he saw him as one of the reasons Mr. Hudson was no longer employed with the Kitsap County Sheriff's Office. Id. at 36. Moreover, Mr. Hudson's account of the alleged cover-up was riddled with hearsay. See, e.g., 40 REC 21521, 21526, 21528. The Court remains unconvinced that this is credible impeachment evidence against Detective Wright.

Therefore, Gentry's IAC claim concerning counsel's failure to investigate Detective Wright was correctly decided in the Court's prior Order.

### c. Crime Scene and Head Injury Experts

In its prior order, the Court denied Gentry's IAC claim that his trial counsel failed to investigate and present expert testimony regarding the crime scene forensic evidence. Dkt. #288 at 19, 23. Gentry now contends that both the Washington Supreme Court and this Court failed to adequately consider all of forensic expert Kay Sweeney's analysis, Dkt. #293 at 6, and submits a declaration from Mr. Sweeney, id. at Ex. A, responding to the Court's alleged misinterpretation of his previous report.

Gentry asserts that Mr. Sweeney's declarations "specifically accounted for the one to three inch depression as natural settling," and "contested the notion that the broken stick recovered from under the victim's head is proof that the fatal blow occurred at the final resting place." Id. at 7. However, Gentry points to nothing that persuades the Court away from its original conclusion. First, the Court recognized in its Summary Judgment Order that Mr.

Sweeney had concluded that the stick could have been broken by one of the detectives or the assailant, but found that because Dr. Reay's testimony elicited the same information, the Washington Supreme Court reasonably concluded that the additional information provided by Mr. Sweeney would not have altered the outcome of the trial. See Dkt. #288 at 15-16. Neither Mr. Sweeney's March 2006 report nor his new declaration sheds any further light on the matter.

Second, although Gentry correctly notes that "Mr. Sweeney made clear that there was a strong, alternative explanation for the indentation of the victim's body at the final resting place," Dkt. #293 at 7 n.3, Mr. Sweeney's declaration did not specifically express a conclusion regarding the soil indentation. After reviewing the photographs showing the victim in the final resting place, Mr. Sweeney did not conclude that the indentation was caused by natural settling and not a blow to the head. Rather, he merely asserted the likelihood that a head would cause such an indentation.[2] See 37 REC 19982. As noted in the Court's Summary Judgment Order, Dkt. #288 at 16 & n.12, Dr. Donald Reay similarly attested during Gentry's case-in-chief that the soil indentation "could have been caused either by a blow to the victim's head, or the weight of her body given the amount of blood in the soil and the length of time that had elapsed before her discovery," id. at 16.

Gentry is right, however, to correct the Court's conclusion regarding the "synopsis" of Mr. Sweeney's report; Mr. Sweeney did assert that the victim's body was likely moved to the final resting place after receiving the blows to the head. See Dkt. #251, Ex. 1 at 6. But even if trial counsel was deficient in failing to present expert testimony like Mr. Sweeney's that the fatal blow was not delivered at the final resting place, the Court finds that there was no resulting prejudice. See Dkt. #288 at 14 ("[a]ssuming, without deciding, that trial counsel's failure to investigate the crime scene evidence fell below the objective standard of reasonableness"). The jury was made aware of this alternate theory through the testimony of Dr. Reay. See id. at 22

---

[2] In addition, Mr. Sweeney's March 2006 report includes no specific reference to the soil indentation under the victim's head.

("Dr. Reay also testified that the victim's pattern of lividity did not eliminate the potential that she was killed twenty-five yards from her final resting place[.]") (citing 17 REC 9181:22-9182:3). The added effect of Mr. Sweeney's corroboration of this theory would have been negligible in light of the evidence that both this Court and the state court found to be most damaging to Gentry – the undisputed evidence that "Cassie was struck between eight and fifteen times with a two-pound rock, including one blow to the forehead through her sweatshirt, with sufficient force to cause a fatal injury." Id. Thus, the Court remains unpersuaded that further evidence casting doubt on the State's theory would have advanced Gentry's cause.

Finally, Gentry contends that trial counsel's failure to obtain expert evidence regarding the number of fatal blows to the head constituted IAC. Dkt. #293 at 8. However, as recounted in the Court's Summary Judgment Order, see Dkt. #288 at 22, ample evidence of Gentry's one-fatal-blow theory was presented at trial. Because Gentry offers no new evidence or argument on this point in his motion for reconsideration, the Court's decision to deny this IAC claim stands.

### d. DNA and Serological Test Results

Gentry's next IAC claim asserts that his counsel was deficient for failing to present expert testimony contending that the statistical results of the State's DNA and serological evidence were erroneous. Dkt. #293 at 8. In its Summary Judgment Order, the Court found that Gentry's counsel was not deficient for choosing to contest the reliability of the scientific testing rather than the statistical results. See Dkt. #288 at 31-32. Gentry's present motion offers no new evidence other than a declaration from his trial counsel asserting that the Court's Order incorrectly concluded that his failure to retain an expert statistician was a strategic decision on his part. Dkt. #293 at Ex. B.

As noted in the Summary Judgment Order, Strickland requires a presumption that counsel was competent which can be rebutted only upon a showing that counsel's performance was "objectively unreasonable under prevailing professional norms and was not the product of sound strategy." Dkt. #288 at 27 (quoting Duncan v. Ornoski, 528 F.3d 1222, 1234 (9th Cir. 2008)).

Although the Court does not doubt Mr. Robinson's sincerity in his belief that his performance fell below the required standard of care, the Court must be guided by an objective standard of reasonableness to determine not whether trial counsel arguably could have performed better, but whether Gentry received a fair trial. See Strickland, 466 U.S. at 689. Trial counsel's statements cannot alone unravel the Court's objective assessment of the circumstances. See Summary Judgment Order, Dkt. #288 at 31 n.38. Although Mr. Robinson could have, upon reflection, presented expert testimony rebutting the statistical results of the DNA tests, the Court maintains its position that his failure to do so was not objectively unreasonable under prevailing professional norms.

The Court's Summary Judgment Order recounted just how much emphasis trial counsel placed on the unreliability of the tests themselves. See id. at 28-30. Considering counsel's efforts to persuade the jury to disregard the scientific evidence altogether, it was not objectively unreasonable to forego an alternate theory that would require the jury to scrutinize that same evidence and focus on the statistical results. Gentry contends that since trial counsel argued both the issue of identity and the issues of intent and premeditation in his closing argument, an argument asserting alternate theories on how to view DNA evidence would have been consistent and effective. But the Court cannot ignore that the scientific evidence was far more technical and complex, and conflicting theories regarding the reliability of the science would be more likely to confuse the jury.

Because Gentry has failed to demonstrate manifest error in the Court's prior decision, his motion for reconsideration of this IAC claim is denied.

### e. Rape Judgment and Sentence Redaction

Gentry further seeks reconsideration of his IAC claim regarding his counsel's failure to request that Judge Hanley's name be redacted from the Judgment and Sentence of Gentry's prior rape conviction. Dkt. #293 at 11. The Court's Summary Judgment Order denied this claim. Dkt. #288 at 41. Gentry's motion for reconsideration largely reiterates the arguments already

1    rejected by the Court.

2         Gentry's IAC claim hinges on the merits of the underlying issue – whether Judge

3    Hanley's name on the 1988 rape judgment and sentence was an impermissible comment on the

4    evidence. Both the state court and this Court found no impermissible comment on the evidence,

5    see Dkt. #288 at 39-40, and Gentry has presented no reason for the Court to reconsider this

6    determination. Gentry's IAC claim on this ground must, therefore, fail, for certainly "[t]he

7    failure to raise a meritless legal argument does not constitute ineffective assistance of counsel,"

8    Baumann v. United Sates, 692 F.2d 565, 572 (9th Cir. 1982).

9         The Court further found that even assuming counsel's performance was deficient, there

10   was no resulting prejudice because the judge instructed the jury to disregard any comments on

11   the evidence and there was no showing that the jury ignored that instruction. Dkt. #288 at 41.

12   In his present motion, Gentry attempts an argument that the unredacted Judgment and Sentence

13   was not a comment on the evidence but rather "Judge Hanley's clearly stated opinion." Dkt.

14   #293 at 11. This is a distinction without a difference. The evidence the jury was to consider

15   was the Judgment and Sentence itself. To the extent Judge Hanley's signature on the Judgment

16   and Sentence could be construed as his opinion on the evidence, the jury was already instructed

17   to disregard such commentary. Gentry's speculations that the jury may have been swayed by

18   Judge Hanley's name, id., and that Judge Hanley would have obliged his redaction request, id. at

19   12, are not enough to alter the Court's conclusion.

20                          **f. Penalty Phase Instruction**

21        Finally, Gentry asks the Court to reconsider his claim that trial counsel was ineffective in

22   proposing and failing to object to ambiguous penalty phase jury instructions. Gentry contends

23   that because the judge inconsistently used the singular "mitigating circumstance" and the plural

24   "mitigating circumstances" in the sentencing instructions, the jury failed to consider the

25   mitigating circumstances collectively. In its Summary Judgment Order, the Court explained in

26   detail its conclusion that "the sentencing instructions did not preclude the jury from giving effect

27
28   ORDER DENYING MOTION FOR
     RECONSIDERATION - 9

to any of the mitigating evidence nor did they preclude the jury from considering the evidence 'together.'" Dkt. #288 at 55.  In his present motion, Gentry reasserts without further analysis that "but for counsel's errors, there is a reasonable probability that the result of the penalty phase would have been different."  Dkt. #293 at 12.  Gentry has offered nothing that even approximates the burden he bears on a motion for reconsideration to demonstrate manifest error.  As the Court made clear in its prior order, the jury was directed to consider any and all mitigating circumstances, and Gentry cannot prevail based on mere speculation that it failed to do so.

Gentry further contends that he was deprived of effective assistance of appellate counsel when they failed to raise as an issue on appeal the Eighth and Fourteenth Amendment violations caused by the penalty phase instructions.  Id. at 12-13.  However, because the Court has ruled on the merits of Gentry's Eighth and Fourteenth Amendment claim, see Dkt. #288 at 52 ("[T]he touchstone of the Court's inquiry here is 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence.'") (quoting Boyde v. California, 494 U.S. 370, 380 (1990)), the Court finds no deficiency or prejudice in appellate counsel's failure to raise the claim, see id. at 51 n.54 ("Given the Court's ruling below that there were no instructional errors, . . . Gentry's accompanying IAC allegations fail as well).

### 2.  State Court Decision

Gentry maintains that AEDPA imposes no bar to relief on his IAC claims because the state court either never adjudicated certain claims or based its denial of his claims on "an unreasonable application of [] clearly established federal law" or on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (d)(2).  The Court finds that its Summary Judgment Order accorded proper consideration of the state court's opinion for each of Gentry's IAC claims.

ORDER DENYING MOTION FOR
RECONSIDERATION - 10

### a. Unadjudicated Claims

Gentry first contends that the state court failed to adjudicate several of his IAC claims, entitling him to *de novo* review by this Court. Dkt. #293 at 16. Indeed, the Court did review *de novo* Gentry's IAC claim with respect to Detective Wright. After concluding that the state court's decision regarding the jailhouse informants was not contrary to, or an unreasonable application of clearly established federal law, Dkt. #288 at 34, the Court went on to assess the merits of Gentry's claim regarding Detective Wright without deference or even reference to the state court opinion, id. at 34-36. Similarly, the Court engaged in *de novo* review of Gentry's jury instructions claim. Id. at 52 n.55. Gentry's contention that the Washington Supreme Court "wholly failed to adjudicate" his IAC claim with respect to the hair, DNA and serology is belied by this Court's lengthy citation to the state court's opinion on this issue. See Dkt. #288 at 25. Because the state court decided on the merits of the claim, see id. at 25-26 (citing cases), Gentry is not entitled to *de novo* review here.

Nor does the state court's failure to decide both Strickland prongs of some of the IAC claims entitle Gentry to *de novo* review of the unadjudicated prong. "[T]here is no reason for a court . . . to address both components of the [Strickland] inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. Gentry cites two cases in which the Supreme Court reviewed *de novo* the prong unadjudicated by the state court only because it disagreed with the state court's determination of the adjudicated prong. In both Wiggins v. Smith, 539 U.S. 510 (2003), and Rompilla v. Beard, 545 U.S. 374 (2005), the Supreme Court found that the state courts had unreasonably applied Strickland in their assessments of deficiency, leaving the federal court to decide the prejudice issue in the first instance. See Wiggins, 539 U.S. at 534; Rompilla, 545 U.S. at 390. Here, the Court found that the Washington Supreme Court's prejudice determinations regarding the jailhouse informants and head injury experts were not contrary to, or an unreasonable application of Strickland. Because Gentry failed to demonstrate otherwise, *de novo* review of the deficiency prong was not

warranted.

Gentry further contends that because certain claims were supplemented by new evidence in federal court, the state court decision is "irrelevant for § 2254(d) purposes." Dkt. #293 at 17. In analyzing Gentry's IAC claims, the Court first assessed whether the state court decision was contrary to or an unreasonable application of Strickland based on the evidence before it. See, e.g., Dkt. #288 at 15-16, 34. However, when presented with new evidence, the Court properly conducted an independent determination on the merits of the claim in light of that new evidence. See, e.g., id. at 17 (finding that analysis of the state court's decision regarding crime scene evidence "is not, however, the end of the inquiry in this federal habeas proceeding"); id. at 19; id. at 34 (finding that the state court's decision on counsel's alleged failure to investigate impeachment evidence "is not a complete ruling on Gentry's IAC claim"); id. at 57.

### b. 28 U.S.C. § 2254(d)(1)

Gentry maintains that various claims were decided "contrary to, or involved an unreasonable application of, clearly established federal law," 28 U.S.C. § 2254(d)(1), in the Washington Supreme Court. Gentry proffers three reasons why the state court decision is entitled no AEDPA deference.

First, Gentry contends that "the state court's opinion betrays a misunderstanding of the applicable law so profound that its opinion is contrary to clearly established federal law," Dkt. #293 at 19, specifically referencing the state court's determinations regarding the sentencing instructions and the hair evidence. But as noted above, supra Part II.B.2.a, the Court reviewed de novo Gentry's IAC claim about sentencing instructions, so the state court's analysis was not determinative. As for the hair evidence, the Court rejects Gentry's assertion that the state court failed to conduct the proper prejudice inquiry. Gentry's claim that the state court "assessed whether the State's evidence was 'misleading' in lieu of conducting a Strickland analysis," Dkt. #293 at 19, mischaracterizes the state court's analysis. The state court determined that "[i]t was not misleading [for the state] to tell the jury that the DNA in that hair matched that of Edward

ORDER DENYING MOTION FOR
RECONSIDERATION - 12

and 6 percent of the population," In re Gentry, 137 Wn.2d at 403, and therefore "Gentry's trial counsel made no errors" in failing to dispute the State's statistics, id. After assessing the DNA evidence, the state court concluded that trial counsel's failure to put forth evidence that was "premised on a theoretical comparison of two random persons to two unknown hairs, rather than to the facts of this case," and that did not add or detract from the scientific information the jury had already received, id., did not constitute deficient performance "to a degree that deprived Gentry of a fair trial," id. at 404. Thus the state court concluded that Gentry's claim failed both parts of the Strickland test. It found that because Gentry's expert testimony was not persuasive enough to cast doubt on the State's statistical results, Gentry's counsel was not deficient for failing to present that testimony. It further found that to the extent counsel was deficient in failing to consult additional experts, such deficiency did not render the result of the trial unreliable. The Court finds that the state court conducted a sufficient analysis of the Strickland inquiry; certainly, Gentry has not shown that the court's decision constituted an "objectively unreasonable conclusion," Rompilla, 545 U.S. at 389.

Second, Gentry contends that the state court invoked an incorrect and unreasonable prejudice standard. Dkt. #293 at 20. Specifically, Gentry believes the state court required him to show that counsel's adequate performance would have altered the outcome of trial instead of applying the less stringent Strickland standard of whether the defendant had shown that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," Strickland, 466 U.S. at 694. But the Court finds that the state court applied the proper standard. First, in its analysis of Gentry's Brady claims, the state court explained in detail the "reasonable probability" standard that governs the materiality inquiry. 137 Wn.2d at 396. In so doing, the state court quoted United States v. Bagley, 473 U.S. 667, 682 (1985), which, in articulating the standard for material evidence, specifically adopted the Strickland formulation. The state court noted that "reasonable probability" of a different result is shown when the evidence suppressed "undermines confidence in the outcome

of trial." Id. (internal quotation marks omitted). In its analysis of Gentry's IAC claims, the state court quoted Strickland to define prejudice as whether the errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Id. at 400 (quoting Strickland, 466 U.S. at 687). Although the state court did not repeat the "reasonable probability" language, its emphasis on a "reliable" result indicates it set forth the proper standard. Moreover, after laying out the Strickland inquiry, the state court cited to State v. Mierz, 127 Wn.2d 460, 471 (1995), which quotes the same language and then further defines a reliable result using the "reasonable probability" standard. The fact that the state court did not explicitly define reliability after it had already extensively discussed the comparable Brady materiality standard does not alone indicate an unreasonable interpretation of Strickland.

Gentry points to the state court's statement that "[i]t is inconceivable pursuing this line of investigation and introducing such testimony would have altered the outcome of trial," 137 Wn.2d at 402, to buttress his claim that the court invoked an incorrect standard. However, the state court's use of the word "inconceivable" indicates that Gentry's attempt at reaching the "reasonable probability" standard missed the mark by a longshot; surely an inconceivable notion does not leave room for reasonable probability. Indeed, Strickland itself provides that "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." 466 U.S. at 693. Given Strickland's instruction that even "conceivable" probability of a different result is not enough to demonstrate prejudice, the state court's finding that a different outcome is "inconceivable" merely emphasizes the extent to which Gentry failed to meet his burden.

Finally, Gentry contends that the state court's decision was unreasonable in failing to consider all record facts legally relevant to the federal question. But the Court finds that even if this were true, its Summary Judgment Order remains in tact. Gentry's claim that the state court failed to consider evidence regarding the location of the fatal blow ignores all indication that the court simply did not agree that this was a "critical factor," Dkt. #293 at 21, in determining his

moral culpability. <u>See</u> 137 Wn.2d at 402. As indicated above, <u>supra</u> Part II.B.1.c, this Court is no more convinced that the location of the fatal blow was critical to Gentry's conviction or death penalty sentence. Further, Gentry has not adequately supported his claim that the state court miscalculated the probabilities of a DNA match, and therefore has not shown the decision to be objectively unreasonable. Finally, Gentry's claim that the state ignored crucial evidence regarding the jailhouse informants, Dkt. #293 at 21, even if true, is not determinative, as this Court concluded that its own <u>Brady</u> analysis foreclosed this IAC claim, <u>see</u> Dkt. #288 at 33.

In sum, Gentry has failed to show either that the state court decision was objectively unreasonable, <u>see</u> <u>Early v. Packer</u>, 537 U.S. 3, 11 (2002) (state court decisions "can be subjected to habeas relief only if they are not merely erroneous, but 'an *unreasonable* application' of clearly established federal law"), or that this Court failed to accord proper consideration of his claims under the appropriate standards.

### c. 28 U.S.C. § 2254(d)(2)

Gentry also contends that the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Here Gentry points to this Court's determination regarding the DNA evidence to support his claim that the state court failed to adequately develop the material facts. Dkt. #293 at 22. But as noted above, the Court assumes that Mr. Robinson's declaration is truthful and has no reason to doubt his sincerity or his motives. An evidentiary hearing eliciting the same would have been to no avail, for counsel's concessions are not determinative. Rather, the Court's objective assessment of his performance yielded its finding that he did not perform deficiently.[3]

Again, Gentry has not met his significant burden to show that the state court's determination of the facts was unreasonable, and therefore the Court finds no error in its original

---

[3] As the Court does not credit Gentry's claim that the state court ignored critical record evidence, <u>see</u> <u>supra</u> Part II.B.2.b, his reassertion of that argument here is not well taken.

ORDER DENYING MOTION FOR
RECONSIDERATION - 15

analysis of the Washington Supreme Court decision.

### 3. Victim Impact Testimony

The Court denied Gentry's claim that the admission of Cassie Holden's father's testimony in the penalty phase violated his Fifth, Sixth, Eighth and Fourteenth Amendment rights. Dkt. #288 at 50. In his present motion, Gentry does not seek reconsideration of the Court's finding rejecting his IAC, Eighth Amendment, and ex post facto claims. Instead, he addresses the one aspect of his claim the Court did not adjudicate in its previous order – whether Gentry was deprived of his right to a fair and impartial jury because his counsel never had the opportunity to question the jury regarding victim impact evidence. See Dkt. # 293 at 23; Dkt. #275 at 13; Dkt. #47 at ¶ 15.2. Gentry is right to call the Court's attention to this omission. However, upon consideration of the issue, the Court finds that Gentry fares no better on this final aspect of his challenge to the victim impact evidence.

Part of the right to a fair trial is "an adequate *voir dire* to identify unqualified jurors," Morgan v. Illinois, 504 U.S. 719, 729 (1992). Payne v. Tennessee, 501 U.S. 808 (1991), which held that "the Eighth Amendment erects no *per se* bar" to the admission of victim impact evidence, id. at 827, was decided after the jury's verdict in the guilt-phase of Gentry's trial and before the penalty phase. Gentry contends that he was deprived of his right to an impartial jury because venire members were not questioned about their ability to remain fair and impartial "even when confronted with a grieving father," Dkt. #293 at 24. "To be constitutionally compelled, however, it is not enough that such questions might be helpful [in assessing whether a juror is impartial]. Rather, the trial court's failure to ask these questions must render the defendant's trial fundamentally unfair." Mu'Min v. Virginia, 500 U.S. 415, 425-26 (1991). Although Gentry's counsel did not specifically question potential jurors about the effects of victim impact testimony,[4] the subsequent change in evidence rules did not render voir dire

---

[4] Despite Gentry's previous suggestion that his trial counsel was ineffective for failing to anticipate Payne's holding, Dkt. #275 at 12, Gentry now asserts that counsel did not voir dire the jury on

1  inadequate.

2      In its Summary Judgment Order finding no Eighth Amendment violation, the Court

3  quoted from Justice O'Connor's concurring opinion in Payne, in which she remarked, "I do not

4  doubt that the jurors were moved by [the victim impact] testimony – who would not have been?

5  But surely this brief statement did not inflame their passions more than did the facts of the

6  crime." 501 U.S. at 832 (O'Connor, J., concurring). Given the jurors' "unavoidable familiarity"

7  with the facts of the murder itself, id., this Court found that Mr. Holden's testimony was "not so

8  unduly prejudicial that it rendered Gentry's sentence fundamentally unfair," Summary Judgment

9  Order, Dkt. #288 at 48. In the same vein, questions about whether jurors could remain impartial

10 in light of the gruesome facts of the case and whether they could remain impartial in light of

11 victim impact evidence address the same juror qualification. During voir dire, the State

12 specifically questioned venire members about their ability to assess the evidence impartially

13 once exposed to unpleasant photographs and the gruesome details of the murder. See, e.g., 9

14 REC 4452-53. Defense counsel also questioned jurors about the potential effect of emotionally

15 inflammatory evidence on their decisionmaking.[5] Although most jurors are bound to be moved

16 by the testimony of a grieving parent, counsel's ability to distinguish potential jurors who may

17 be unable to render a rational decision when faced with emotionally charged evidence protected

18 Gentry's right to an impartial jury.

19     Furthermore, the Court is unpersuaded by Gentry's argument that victim impact evidence

20

21 this issue "because counsel reasonably perceived it to be unnecessary under Washington law," Dkt. #293

22 at 24.

23     [5] See, e.g., 9 REC 4590 ("Q. Do you think that looking at grotesque pictures that [] will

24 definitely evoke an emotional response from you, is it going to cause you in any way to lower the burden
   that the State has in order to convict somebody for what was a horrible crime?"); id. at 4631 (Defense

25 counsel asking potential juror what she would do with "the anger that [she is] likely to feel" upon seeing
   those photographs). Defense counsel further questioned venire members on whether they would be able

26 to distinguish the horrible fact of "what happened to Cassie Holden, on one hand, and who is responsible
   for it on the other hand." Id. at 4633-34.

27

28 ORDER DENYING MOTION FOR
   RECONSIDERATION - 17

is akin to evidence eliciting racial prejudice.  <u>See</u> Dkt. #293 at 23.  The Supreme Court has held that "the possibility of racial prejudice against a black defendant charged with a violent crime against a white person is sufficiently real that the Fourteenth Amendment requires that inquiry be made into racial prejudice."  <u>Mu'Min</u>, 500 U.S. at 424.  Questions about race seek to discover jurors' long-held beliefs or predispositions to making unfair judgments based on racial prejudice.  Victim impact evidence, by contrast, does not similarly trigger a specific bias.  Rather, questions about victim impact evidence reveal more generally whether a juror will remain impartial despite the admission of emotionally charged evidence.  It is not the case that a lawyer must confront potential jurors with the possibility of every piece of emotionally charged evidence to discern their hypothetical reactions.  In Gentry's case, trial counsel effectively probed each venire member's susceptibility to evocative evidence, whether that evidence took the form of gruesome photographs, graphic descriptions, or a grieving father's testimony.

### 4.  Cumulative Error

In its Summary Judgment Order, the Court considered the cumulative prejudice of Gentry's <u>Brady/Napue</u> and IAC claims and determined that "[a]ny missteps or misjudgments of Gentry's counsel even when considered cumulatively with the State's failure to disclose the <u>Brady/Napue</u> material did not render Gentry's trial fundamentally unfair."  Dkt. #288 at 58.  Gentry now contends that the Court has not properly considered the cumulative errors in this case.  Dkt. #293 at 14.

On further briefing, the State challenges Gentry's cumulative error claim on several grounds.  First, it contends that the Court should not even consider the issue since Gentry's amended habeas petition never included cumulative error as a discrete claim.  Dkt. #300 at 2.  But the case law does not require Gentry to specifically raise the claim.  Rather, the cumulative error analysis is the final step of the Court's prejudice inquiry, for even if "no single trial error examined in isolation is sufficiently prejudicial . . ., the cumulative effect of multiple errors may still prejudice a defendant," <u>United States v. Frederick</u>, 78 F.3d 1370, 1381 (9th Cir. 1996).  For

1  the same reason, the State fails in contending that the Court's findings of insufficient prejudice

2  on Gentry's individual claims obviate a cumulative error analysis. Dkt. #300 at 3. Moreover,

3  even if the Ninth Circuit's cumulative error doctrine is not "clearly established federal law"

4  under 28 U.S.C. § 2254(d), see id. at 2, the Court's analysis is not confined to AEDPA

5  deference. The Court independently reviews the cumulative error issue in light of its

6  "determination of the Brady/Napue claims and dismissal of some of the IAC claims based on

7  Strickland's second element," Dkt. #288 at 57.

8      Upon further analysis, however, the Court still finds that Gentry's cumulative error claim

9  must fail. Gentry points to several key deficiencies that, when taken together, he claims

10  produced a fundamentally unfair trial. See Dkt. #293 at 14-15. But the Court specifically found

11  no deficiency on most of those issues. Indeed, the Court found that counsel's conduct

12  constituted reasonable professional assistance with regard to the DNA and serology evidence,

13  see Dkt. #288 at 26, Detective Wright, id. at 36, the unredacted Judgment and Sentence, id. at

14  41, and the penalty phase instructions, id. at 51 n.54. The Court also rejected Gentry's victim

15  impact testimony claim. Id. at 46. None of these determinations has been altered by the present

16  Order. Among these claims, the absence of a single deficiency leaves "no errors to cumulate,"

17  In re Gentry, 137 Wn.2d at 417.

18      This leaves only two claims for which the Court must weigh the cumulative prejudice –

19  the impact of the jailhouse witnesses and the absence of Gentry's crime scene and head injury

20  experts. The Court decided both of these claims based on the prejudice prong of the Strickland

21  inquiry. Gentry particularly emphasizes counsel's alleged errors regarding the jailhouse

22  witnesses. Dkt. #293 at 14-16. The Court's finding of no prejudice turned on the same facts as

23  its previous conclusion that this Brady evidence was not material. See Dkt. #288 at 33. Indeed,

24  the Court provided an extensive analysis of the cumulative effect of the Brady and Napue

25  material on the outcome of the proceedings, including the guilt and penalty phases of the trial,

26  see Dkt. #283 at 20-25, and concluded that Gentry had not shown a reasonable probability that

27
28  ORDER DENYING MOTION FOR
    RECONSIDERATION - 19

the result of the trial would have been different had the exculpatory evidence been disclosed. The Court finds that any additional errors counsel may have made in failing to consult crime scene and head injury experts, when added to the Brady/Napue evidence and implicit deficiency with regard to the jailhouse informants, do not amount to a violation of Gentry's constitutional rights. The cumulative impact of the favorable evidence is not so overwhelming to "put the whole case in such a different light as to undermine confidence in the verdict," Banks v. Dretke, 540 U.S. 668, 698 (2004) (quoting Kyles v. Whitley, 514 U.S. 419, 435 (1995)). Even if the cumulative error had some "conceivable effect" on the outcome of the proceeding, Gentry has not met the "highly demanding and heavy burden" he bears "in establishing actual prejudice." Williams v. Taylor, 529 U.S. 362, 394 (2000) (internal quotation marks omitted).

### 5. Admission of Judgment and Sentence

In his motion for reconsideration, Gentry again advances his claim that his Eighth and Fourteenth Amendment rights were violated by the introduction of the unredacted Judgment and Sentence of his prior rape conviction. In a thorough analysis, the Court's prior order denied this claim, Dkt. #288 at 59-62, and Gentry offers nothing to persuade the Court that its determination was in error.

Gentry first contends that upon seeing Judge Hanley's name on the exceptional sentence for rape, the jury's sense of responsibility was lessened appreciably. Gentry's comparison to Caldwell v. Mississippi, 472 U.S. 320 (1985) is unavailing. In Caldwell, the prosecutor specifically informed the jury that it was not ultimately responsible for sentencing the defendant to death because its decision would be reviewed by an appellate court, id. at 325. Gentry's speculation, on the other hand, that the jury might have interpreted the judge's signature on a sentence above the guideline range as a judicial mandate to sentence Gentry to death is far-fetched to say the least. The Court finds that no reasonable juror would view the unredacted Judgment and Sentence as a divestment of her responsibility to sentence the defendant based on a consideration of all the relevant evidence.

Gentry also focuses on the State's statement in its closing argument that "when he was convicted of that Rape, . . . the first time through he left a witness." Dkt. #293 at 26 (quoting 19 REC 10494). But this statement merely advances the State's case that Gentry is a violent career criminal. It certainly does not, as Gentry suggests, indicate that the prior rape and subsequent murder were part of a common scheme or plan such that Judge Hanley's sentence on the former conviction was determinative of Gentry's death sentence for his murder conviction.

Because Gentry advances no new argument that unravels the Court's previous analysis, his motion for reconsideration of this claim fails.

### 6. Proportionality

Gentry further contends that the proportionality review conducted by the Washington Supreme Court violated his right to due process. Dkt. #293 at 30. However, this claim is found nowhere amongst Gentry's "Grounds for the Relief Sought in this Proceeding"or the "Statement of Claims Presented" in his first amended habeas petition, Dkt. #47. Gentry asserts that his arguments regarding "the Washington death penalty statute, proportionality, and cumulative error are exempted by this Court's order from the standard of review set out in Local Rule 7(h)." Dkt. #293 at 1. But in granting Gentry leave to file a motion for reconsideration with respect to various claims and exempting those claims from the usual standard, Dkt. #288 at 63, the Court did not open the door to the submission of new claims never asserted in the habeas petition. The Court will not review a claim raised for the first time in a motion for reconsideration without "a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." Local Rule 7(h)(1). Gentry has made no such showing here.

### 7. Constitutionality of Washington's Death Penalty Statute

In determining whether to impose the death penalty, the jury is instructed to deliberate on the following question: "Having in mind the crime of which the defendant has been found guilty, are you convinced beyond a reasonable doubt that there are not sufficient mitigating circumstances to merit leniency?" RCW 10.95.060(4); see also id. 10.95.070 (setting forth a

non-exhaustive list of factors the jury may consider). Gentry contends that, notwithstanding the Ninth Circuit's rejection of the claim in <u>Campbell v. Kincheloe</u>, 829 F.2d 1453, 1464 (9th Cir. 1987), the Washington death penalty statute is unconstitutionally vague. Dkt. #293 at 31. Although the Court granted Gentry leave to file a motion for reconsideration supporting this claim, Dkt. #288 at 63, the Court must faithfully follow binding Ninth Circuit precedent as articulated in <u>Campbell</u> and affirmed in <u>Brown v. Lambert</u>, 451 F.3d 946, 948 (9th Cir. 2006).

Indeed, given the state court's citation to <u>Tuilaepa v. California</u>, 512 U.S. 967 (1994), the Court has no basis to say that the Washington Supreme Court's decision is contrary to, or an unreasonable application of, clearly established federal law. Contrary to Gentry's contention that the Washington statute permits unconstitutionally broad consideration of the circumstances of the crime by the jury, Dkt. #293 at 30-31, "[t]he circumstances of the crime are a traditional subject for consideration by the sentencer, and an instruction to consider the circumstances is neither vague nor otherwise improper under our Eighth Amendment jurisprudence," <u>Tuilaepa</u>, 512 U.S. at 976. The Washington death penalty statute properly "points the sentencer to a subject matter," <u>id.</u> at 975, and "rel[ies] upon the jury, in its sound judgment, to exercise wide discretion," <u>id.</u> at 974, that is well within constitutional bounds.

### III. CONCLUSION

For all of the foregoing reasons, Gentry's motion for reconsideration (Dkt. #293) is DENIED.

DATED this 23rd day of March, 2009.

_Robert S. Lasnik_
Robert S. Lasnik
United States District Judge

ORDER DENYING MOTION FOR
RECONSIDERATION - 23